UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HEATHER SEARS, MICHAEL JOBIN, ) | | |
| BERNARD D. OLMSTED and ) | CIVIL ACTION NO. | |
| BARBARA W. OLMSTED, as ) | | |
| TRUSTEES of the OLMSTED TRUST, ) | | |
| JAMES C. GRAZIANI and JULIE A. ) | | |
| GRAZIANI, ) | | |
| Plaintiffs ) | | |
| ) | | |
| V. ) | **COMPLAINT** | |
| ) | | |
| ) | | |
| RIVER STREAM FUND, ) | | |
| REGAN & COMPANY, and ) | | |
| MICHAEL CARROLL REGAN, ) | | |
| Defendants ) | | |
| ) | | |
| and ) | | |
| ) | | |
| SECURITIES & INVESTMENT ) | | |
| PLANNING CO., JEFFERIES & ) | | |
| COMPANY, INC. and ) | | |
| BANK OF AMERICA, ) | | |
| Relief Defendants ) | | |

### Preliminary Statement

This is an emergency action on behalf of certain investors in the River Stream Fund ("the Fund"), a private unregistered investment fund located here in Massachusetts. Many of the investors are Massachusetts residents, although there are a number of investors from other states

as well. The Fund was founded about ten years ago by Michael Carroll Regan ("Regan"), a Massachusetts resident, who has managed the fund and had custody of its assets from the outset.

According to monthly statements sent out to investors by Regan, the Fund has consistently, year in and year out, had a 20% or higher return on equity. Based on such performance, Regan has consistently paid himself a performance fee in an amount equal to 20% of the Fund's gross increase in value. As late as April 2008, the investors received from Regan statements showing their accumulated equity based on purported consistent 20% plus returns on their investment.

Suddenly, without any inkling or warning of any problem with the Fund, the investors all received, approximately 3 weeks ago, a letter dated May 6, 2008 from Raymond Mansolillo, a Providence, Rhode Island lawyer, on behalf of Regan saying that "all assets of the River Stream the Fund have been frozen pending a forensic audit." A copy of the letter is attached hereto as Exhibit "A." The letter went on to say that Regan is cooperating with federal law enforcement authorities and had retained Mr. Mansolillo's firm along with certified public accountants "to review the investment fund activities for possible fraud." The letter told the investors not to contact Regan or the Fund. Since that time, the investors have not been able to access their funds.

The Massachusetts Securities Division has filed an Administrative Complaint against the Fund and Regan for offering and selling unregistered and non-exempt securities in the Commonwealth and for failure to register and acting as an investment advisor. A copy of the Complaint is attached hereto as Exhibit "B." The Securities Division has entered an order allowing an *ex parte* motion of the Enforcement Section for a Temporary Order to Cease and Desist from offering and selling unregistered non-exempt securities and acting as an unregistered investment advisor and investment advisor representative in Massachusetts. A copy of the

Temporary Order to Cease and Desist is attached hereto as Exhibit "C." The Securities Division has not taken any steps to freeze the assets and funds of the Fund or prevent Regan from dissipating, concealing or transferring the assets and funds of the Fund and its investors.

On information and belief, the United States Postal Inspection Service's New York office, in conjunction with the United States Attorney's Office and the New York Regional Office of the Securities and Exchange Commission are both currently informally investigating this matter. However, to the knowledge of the investors, no steps have been taken by any federal agency or instrumentality to freeze the assets and funds of the Fund and its investors or to prevent Regan from dissipating, concealing, or transferring those assets and funds.

The Complaint of the Massachusetts Securities Division seeks relief in the form of an order which, *inter alia*, would (i) "obtain an accounting of all securities sold to investors and offer recission to compensate investors for those losses attributable to the alleged wrongdoing;" and (ii) "disgorge all profits realized as a result of Respondents' violations of the Act."

The purpose of this action is to obtain emergency equitable relief to minimize investor losses and maintain the *status quo* pending final resolution of the Massachusetts Securities Division's administrative action and any action by the United States Postal Inspection Service and/or the Securities and Exchange Commission.

## Jurisdiction

1.  This action arises under sections 10(b) and 27 of the Securities Exchange Act of 1934, as amended, and SEC Rule 10b-5 thereunder, as hereafter more fully appears.

## Parties

2. The Plaintiffs, Heather Sears ("Sears") and Michael Jobin ("Jobin"), are husband and wife, and reside in Boston, Massachusetts. Plaintiffs Sears and Jobin are investors in the River Stream Fund.

3. The Plaintiffs, Bernard D. Olmsted and Barbara W. Olmsted are husband and wife, are Trustees of the Olmsted Revocable Trust under a Trust Agreement dated January 22, 2004, and reside in Napa, California. Plaintiffs Bernard D. Olmsted and Barbara W. Olmsted, trustees of the Olmsted Revocable Trust are investors in the River Stream Fund.

4. Plaintiffs James C. Graziani and Julia A. Graziani are husband and wife and reside in Napa, California. Plaintiffs James C. Graziani and Julie A. Graziani are investors in the River Stream Fund.

5. The Defendant, the River Stream Fund ("River Stream") is an unincorporated, unregistered investment fund with a last known principal place of business at 21 Eliot Street, South Natick, Massachusetts 01760.

6. The Defendant, Regan & Company, is an apparently unincorporated d/b/a and the portfolio manager of River Stream.

7. The Defendant, Michael Carroll Regan ("Regan") is an individual with a last known address of 87 Old Connecticut Path, Wayland, Massachusetts. Regan was the founder of River Stream and as "President" of Defendant Regan & Company. Upon information and belief, Regan & Company and River Stream are under the sole control of Defendant Regan.

8. The Relief Defendant, Securities & Investment Planning Co. is a registered broker-dealer having a principal place of business in Chatham, New Jersey.

9. The Relief Defendant, Jefferies & Co. is a registered broker-dealer and clearing firm having a principal place of business in Jersey City, New Jersey.

10. The Relief Defendant, Bank of America, is a bank having a principal place of business in Charlotte, North Carolina and having offices in Massachusetts.

## Allegations of Fact

11. In or about 1998 Regan established River Stream Fund as a stock trading fund operating out of offices at 57 River Street, Wellesley, Massachusetts and began soliciting clients. A form of solicitation letter used by Regan is attached as Exhibit "D."

12. Plaintiff, Bernard D. ("Denny") Olmsted met Regan in the mid-1980s and became personal friends with him. He sponsored Regan and his wife for membership in the Brae Burn Country Club and often played golf with him.

13. In 1998 Denny Olmsted learned that his friend Regan was starting the River Stream Fund. Regan told him that he had a lot of success investing his own money, achieving returns that exceeded 30% per year using a system he developed that involved analyzing short-term market movements. Regan's system involved day trading, closing out his positions at the end of each day and going long or short depending on market trends.

14. To his knowledge and belief, Denny Olmstead was one of the first investors in the fund, so the fund had no track record. However, Regan predicted that Denny Olmsted could certainly expect returns in excess of 20% per year. Regan did not describe the fund as risk-free, but he stated that his approach was safe and conservative because he always put in stop orders when he bought securities and never left the money in overnight, to avoid gaps up and down at the next day's opening.

15. As Portfolio Manager of River Stream, Regan had complete discretionary authority over the investments of the fund, involving buying and selling (long and short) stocks, the use of margin and the retention of cash positions. In addition, and as set forth in the

5

Investment Agreement (a copy of which is attached hereto as Exhibit "E"), Regan received and directed investor funds into Fund bank or brokerage accounts established by him and had full authority to withdraw and dispose of funds and securities in those accounts. Regan also drew up the periodic account statements for investors.

16. Regan told Denny Olmsted that his fees would be 20% of the annual profits, with a minimum return of 12% before fees were applied.

17. At no time did Regan ask Denny Olmsted about his net worth, income, tax bracket, prior investment experience, investment objectives, or his tolerance for risk, nor did he try to determine whether or not Denny Olmsted was a qualified investor.

18. As a result of this and subsequent conversations, Denny Olmsted and his wife Barbara chose to invest in the River Stream Fund, first individually and then eventually transferring their individual accounts into the Olmsted Revocable Trust, a revocable trust of which both are trustees. They invested $100,000 in the fund in 1998 and subsequently invested an additional $600,000 over the next several years.

19. According to the statements the Olmsteds received, the returns were consistently outstanding, always in excess of 20% per year, pre-fees and taxes. Whenever Denny Olmsted asked Regan how the fund was doing, he was always told that it was doing well. Since the Olmsteds received statements from Regan at least twice a year, and since the returns were consistently excellent, there was no reason to doubt his word.

20. The Olmsteds received annual K-1s from the River Stream Fund always showing capital gains, on which they paid significant taxes to the state and federal taxing authorities.

21. The Olmsteds retired in late 2001, and in 2002 began to withdraw money from the fund to meet living expenses. They did this in a manner that ensured that they were, according to the statements received from Regan, living off income without drawing down principal in order

to ensure their investment fund remained steady and would continue to provide them with income in their retirement years.

22. As of the last statement the Olmsteds received from Regan dated April 15, 2008, their account balance was $857,828, which represented 30% of their total assets.

23. In early May 2008, without any prior notice or warning that the fund was losing money or that anything was amiss with the fund, the Olmsteds received a letter from Regan's lawyer stating that the assets of the fund had been frozen pending an audit and indicating the possibility of fraud.

24. Plaintiff Michael Jobin ('Jobin") and his wife, Heather Sears ("Sears") were introduced to Defendant Regan in or about December 2006 or January 2007 by her friend and life coach Francesca Radbill, who they understood had known and worked with Regan and his River Stream Fund for a number of years.

25. Regan described to Jobin and Sears the trading system he utilized with the River Stream Fund and said his success was based on being very disciplined in sticking to the system. He provided them with a "Summary of the River Stream Fund." A copy of this document is attached hereto as Exhibit "F."

26. In response to a question of Jobin's on the risk profile of the fund, Regan told him he considered it low risk because the focus was only on short term movements, with stop loss (or limit gain) prices to prevent large losses. According to Regan, trades were always closed out by the end of the day, so nothing was exposed to dramatic overnight events.

27. Regan supplied Jobin and Sears with annual fund performance information for the years 1999 through 2006 together with his biographical information. A copy of this fund performance information is attached hereto as Exhibit "G." According to Mr. Regan's data, the fund's returns ranged from 20.64% to 36.18% with no loss years.

28. Regan told Jobin and Sears that he had $19 million under management and that all of his net worth was invested in the fund.

29. Jobin and Sears signed and Investment Agreement with the Fund and gave Regan a check in the amount of $50,000 made payable to the River Stream Fund. A copy of their signed Investment Agreement is attached hereto as Exhibit "H,"

30. In subsequent months, Jobin and Sears made additional investments in the fund which by January 2008 totaled $1,154,000. They withdrew $25,000 in July 2007 and an additional $123,500 on April 1, 2008, so their net amount invested is $1,005,000. The backs of their checks deposited by Regan into an account at Bank of America.

31. The April 15, 2008 statement for Jobin's and Sears' account shows an equity value for their account of $1,313,793 as of April 15, 2008. According to the January 1, 2008 account statement, Jobin and Sears paid Regan $33,785 in management fees in 2007.

32. Jobin and Sears received a K-1 for 2007 from the Fund showing a short-term capital gain of $135,146 on which they paid substantial federal and state taxes.

33. In early May 2008, without any prior notice or warning that the fund was losing money or that anything was amiss with the fund or their account, Jobin and Sears received a letter from Regan's lawyer saying that the assets of the fund had been frozen pending an audit and indicating the possibility of fraud. Copies of the letters sent to Jobin and Sears are attached hereto as Exhibit "I-1" and "I-2."

34. Plaintiff James Graziani ("Graziani") first heard about Regan and the River Stream Fund from Denny Olmsted in or about 2002.

35. After several telephone calls with Regan, during which he was informed by Regan how the fund would operate and confirmed its 20%-plus average annual return, Graziani invested $50,000 in February 2003.

36.     In subsequent years, Graziani and his wife, Plaintiff Julia A. Graziani invested additional amounts into two (2) joint accounts as well as two (2) Individual Retirement Accounts, with their total investment being in excess of $700,000.

37.     Similar to other investors in the Fund, the Grazianis received regular, periodic statements on their accounts showing consistent net gains in their accounts every month. According to their April 15, 2008 statements, the total value of the Grazianis' accounts was $1,038,127.

39.     Investors in River Stream included young people, retired people, widows and divorcees. Some investors gave Regan virtually their entire savings to invest.

40.     All of the investors in River Stream received similar, regular, periodic account statements which always showed consistent, positive returns for every monthly period.

41.     Until the fund was purportedly frozen in May 2008, investors who wished to were able to make withdrawals from the Fund.

42.     The actual number of investors and the purported value of their investments as of the self-imposed freeze on the fund in May 2008 are unknown. However, as of March 1, 2006, the Fund purportedly had 59 accounts with a total value of $11,231.147 and, according to the Complaint of the Massachusetts Securities Division, there were approximately $15,000,000 invested in the Fund according to the April 15, 2008 statements Regan sent to investors.

43.     The River Stream Fund was operated by Regan as a single investment fund. Investors purchased "units" in the fund at the then current value of units with their deposits and the value of their units fluctuated with the gains and losses of the overall fund.

44.     Interests in the River Stream Fund constituted securities as defined under the federal securities laws and the Massachusetts Uniform Securities Act.

45. Interests in the Fund are not registered under either federal or Massachusetts securities laws, nor were they exempt from registration.

46. Regan was not registered as an investment advisor, investment advisor representative, broker-dealer or registered representative of a broker-dealer with the Massachusetts Securities Division, the Securities and Exchange Commission or Financial Industry Regulatory Authority during his management of the fund.

47. Upon information and belief, the River Stream Fund utilized the services of Defendant Securities & Investment Planning Company of Chatham, New Jersey, a registered broker-dealer, to accomplish securities trades. Securities & Investment Planning Company, in turn, utilized the services of Jefferies & Company, of Jersey City, New Jersey as a clearing broker.

48. Since the May 2008 letter from Regan's attorney, the investors in the Fund have had no further communication from the attorney or Regan, have no access to their funds and no knowledge concerning the holdings of the fund or the actual status of their accounts with the fund.

49. The Massachusetts Securities Division has filed an Administrative Complaint against the Fund and Regan for offering and selling unregistered and non-exempt securities in the Commonwealth and for failure to register and acting as an investment advisor. The Securities Division has entered an order allowing an *ex parte* motion for the Enforcement Section for a Temporary Order to cease and desist from offering and selling unregistered non-exempt securities and acting as an unregistered investment advisor and investment advisor representative in Massachusetts. Copies of the Complaint and Temporary Order to Cease and Desist are attached hereto as Exhibits "B" and "C." To the knowledge of the investors, the Securities Division has not taken any steps to freeze the assets and funds of the Fund or prevent

Regan from dissipating, concealing or transferring the assets and funds of the Fund and its investors.

50. On information and belief, the United States Postal Inspections Service's New York office, in conjunction with the United States Attorney's Office and the New York Regional Office of the Securities and Exchange Commission are both currently informally investigating this matter. However, to the knowledge of the investors, no steps have been taken by any federal agency or instrumentality to freeze the assets and funds of the Fund and its investors or to prevent Regan from dissipating, concealing or transferring those assets and funds.

51. The Complaint of the Massachusetts Securities Division seeks relief in the form of an order which, *inter alia*, would (i) "obtain an accounting of all securities sold to investors and offer rescission to compensate investors for those losses attributable to the alleged wrongdoing;" and (ii) "disgorge all profits realized as a result of the Respondents' violations of the Act."

52. According to the Massachusetts Security Division's Administrative Complaint, Regan has recently vacated the offices out of which he was operating the Fund and the Division's investigator found "books and records relating to the Fund and the investors" in the building's dumpster (Exhibit B, paragraphs 20-27).

53. The purpose of this action is to obtain emergency equitable relief to minimize investor losses and maintain the *status quo* pending final resolution of the Massachusetts Securities Division's administrative action and any action by the United States Postal Inspection Service and/or the Securities and Exchange Commission.

53. The self-imposed freeze of the River Stream assets by Regan and his attorney has no credibility and no enforcement mechanism. The assets belonging to investors may have been and may continue to be dissipated by Defendant Regan. A temporary restraining order and

freeze of assets is necessary to prevent further harm and violations of law and minimize the risk of further dissipation of assets.

### First Claim Against All Defendants

54. Plaintiffs repeat and reallege paragraphs 1 through 53 above.

55. Defendants, directly or indirectly, intentionally, knowingly or recklessly, by the use of means or instrumentalities of interstate commerce or of the mails: (a) have employed, or are employing, devices, schemes, or artifices to defraud; (b) have made, or are making untrue statements of material facts or have omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) have engaged or are engaging, in acts, practices, or courses of business which have operated, or are operating as a fraud or deceit upon persons, in connection with the purchase or sale of securities as set forth above, in violation of Section 10(b) of the Exchange Act [15 U.S.C. ¶78j(b)] and Rule 10b-5 [17 C.F.R. ¶ 240.10b-5] thereunder.

### Prayer for Relief

WHEREFORE, the Plaintiffs respectfully request that this Court issue a Temporary Restraining Order, Order Freezing Assets and Order for Other Equitable Relief and for a Preliminary Injunction as follows:

I.

Temporarily restraining and preliminarily enjoining defendants River Stream Fund, Regan & Company and Michael Carroll Regan, and each of them, from violating, directly or indirectly, singly or in concert:

a. Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5]; and

b. Section 17(a) of the Securities Act [15 U.S.C. §77q(a)].

## II.

Pending further order of this Court, immediately freezing:

a. All investor funds required to be accounted for pursuant to paragraph V below, including but not limited to any such funds held by Relief Defendants Securities & Investment Planning Co., Jefferies & Company, Inc. and Bank of America; and

b. All assets of defendants River Stream Fund, Regan & Company, and Michael Carroll Regan and each of them and otherwise preventing any disposition, transfer, dissipation or diminution in value whatsoever of any and all such assets.

## III.

Immediately prohibiting each of the defendants from accepting or depositing into their accounts any monies obtained from actual or prospective investors pending the resolution of this action.

## IV.

Requiring each of the defendants, within five (5) days of service of the Temporary Restraining Order, to take such steps as are necessary to repatriate to the United States any assets that presently may be outside of the United States that were obtained directly or indirectly from United States investors and to hold and preserve such assets in the United States.

## V.

Requiring defendants River Stream Fund, Regan & Company and Michael Carroll Regan, and each of them within five (5) days of service of the Temporary Restraining Order, to submit in writing to the Court an accounting identifying:

13

a. By name, address, amount and date of investment and present location of the proceeds of the investment, as to each and every United States investor who made an investment in the River Stream Fund;

b. Assets of every type and description with a value of at least one thousand dollars ($1,000) presently held for the direct or indirect benefit, or subject to the direct or indirect control, of defendants River Stream Fund, Regan & Company and/or Michael Carroll Regan, whether in the United States or elsewhere;

c. Each and every trade executed by the Fund since inception, the purchase and sale date and price, the security involved, the CUSIP number and the profit or loss on the trade;

d. All transfers of funds received or obtained through the conduct alleged herein, including the location of any persons, entities or accounts to which the transfers were made and the identity and location of any assets derived from such funds;

e. All transfers of assets of $1,000 or more by defendants River Stream Fund, Regan & Company and/or Michael Carroll Regan since April 15, 2008 and the location of any persons, entities, or accounts to which such transfers were made; and

f. All accounts held at broker-dealer, bank or other financial institution in the names of the defendants River Stream Fund, Regan & Company and/or Michael Carroll Regan, and/or otherwise under their control or in which defendants River Stream Fund, Regan & Company and/or Michael Carroll Regan has had any direct or indirect beneficial interest, at any time during the period from the inception of the River Stream Fund to the present.

## VI.

Requiring each of the defendants, within three (3) days of service of the Temporary Restraining Order, to submit to the Court in writing certain identifying information relating to

14

residential and mailing addresses, telephone numbers, postal boxes, safe deposit boxes and storage facilities used by them or under their control, as set forth in the attached proposed order.

### VII.

Immediately prohibiting the defendants from destroying, mutilating, altering, concealing, or disposing of any documents relating to the defendants or any of her securities, financial or other business dealings.

### VIII.

Issuing the attached Summons to Trustee to relief Defendants Securities & Investment Planning Co., Jefferies & Company, Inc. and Bank of America

### IX.

Ordering such other and further relief as this case may require and the Court deems appropriate.

HEATHER SEARS, MICHAEL JOBIN,
BERNARD D. OLMSTED and
BARBARA W. OLMSTED, as TRUSTEES
of the OLMSTED TRUST, JAMES C.
GRAZIANI and JULIE A. GRAZIANI

By _/s/ Thomas H. Tucker_
Thomas H. Tucker, BBO # 504000
P.O. Box 2827
459 Washington Street
Duxbury, MA  02331
(781) 934-8200

Dated: June 3, 2008